## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DORA OCHOA,

       Plaintiff,

v.                                         Civ. No. 09-612 MV/WPL

BOARD OF COUNTY COMMISSIONERS OF
LUNA COUNTY, ED GILMORE, in his individual
and official capacity, CLAUDIA PEÑA, in her
individual and official capacity,

       Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *County Defendants' Motion for Summary Judgment Based in Part on Qualified Immunity on Behalf of Ed Gilmore*, filed October 22, 2009 [Doc. No. 26], and *County Defendants' Motion for Summary Judgment Based in Part on Qualified Immunity on Behalf of Claudia Peña*, filed October 30, 2009 [Doc. No. 28]. The Court has reviewed the motions and briefs submitted by the parties, and the relevant authorities. The Court concludes that the motion for summary judgment on behalf of Ed Gilmore will be granted and the motion for summary judgment on behalf of Claudia Peña will be granted in part and denied in part.

**Plaintiff's Allegations**

This case arises out of Plaintiff Dora Ochoa's termination as an employee of Luna County Healthy Start. According to her Complaint, in January 2005, Ms. Ochoa was hired by Luna County Healthy Start. (Complaint ¶ 9, Doc. No. 1). The first six months of her employment was a probationary period, after which she became a permanent employee. *See id.* Ms. Ochoa was a "grant" employee. *See id.*

Defendant Claudia Peña, Ms. Ochoa's supervisor, notified her, on April 10, 2009, that she

had been rude regarding an April 7, 2009 document.  *See id.* ¶ 10, at 2.  Ms. Peña told Ms. Ochoa

that she wished to meet with her.  *See id.*  During the conversation, Ms. Peña became upset and told

Ms. Ochoa not to speak with anyone. *See id.* ¶ 10, at 3.  That same day, Ms. Peña handed Ms. Ochoa

a document to sign – a Performance Correction Notice with a notice of an immediate dismissal –

and demanded that Ms. Ochoa sign the document with no questions asked.  *See id.* ¶ 11, at 3.

"Because Peña was visibly upset and Ochoa wished to avoid confrontation, Ochoa quickly signed

the document."  *Id.*  Immediately after Ms. Ochoa signed the document, Ms. Peña advised her that

she was fired and should pick up her belongings and leave.  *See id.* ¶¶ 11-12, at 3.  Ms. Ochoa

alleges that the Performance Correction Notice "contained false and slanderous information that

Ochoa neither agreed with nor participated in" and that the "deceptive manner in which Pena forced

Ochoa to sign the Notice of Dismissal supports Ochoa's claim that the document had no basis in

fact."  *Id.* ¶ 12, at 3.  Ms. Ochoa also alleges that the Performance Correction Notice falsely states

that she had received verbal notification regarding her conduct that she had not, in fact, received.

*Id.* ¶ 16, at 4.  She further asserts that although the dismissal notification "alleged direct

insubordination of supervisor," this was "a bogus, disingenuous, and fabricated reason for the

dismissal action," as she had not been insubordinate to Ms. Peña.  *Id.* ¶ 18, at 4.  Ms. Ochoa

additionally alleges that Defendant Ed Gilmore, who was the acting County Manager at the time and

responsible for the administration of Ordinance 23, authorized Ms. Peña to terminate her.  *Id.* ¶¶ 24-

25, at 6.  Ms. Ochoa requested a grievance hearing but was denied the hearing because she "was an

at-will grant employee and did not have any rights to access the grievance process."  *Id.* ¶ 14, at 3.

Ms. Ochoa was hired under the 2000 version of Ordinance 23.  *See id.* ¶ 26, at 6.  The May 2006

amendments to Ordinance 23 reclassified a grant employee as an at-will employee.  *See id.* ¶ 28, at

6.  The progressive discipline process detailed in Ordinance 23 was not applied to Ms. Ochoa and

she did not receive a pre-termination hearing.  *See id.* ¶¶ 34-35, at 7.

On October 22, 2009, Defendants filed a motion for summary judgment based in part on qualified immunity on behalf of Ed Gilmore.  (Doc. No. 26).   Then, on October 30, 2009, Defendants filed a motion for summary judgment based in part on qualified immunity on behalf of Claudia Peña.  (Doc. No. 28).

**Legal Standard**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c)(2).  Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted).  The non-moving party's burden may not be satisfied by "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006) (quoting *Freeman v. Tex. Dep't of Crim. Justice*, 369 F,.3d 854, 860 (5th

3

Cir. 2004)).   Nevertheless, the Court "must view the facts in the light most favorable to the nonmov[ing party] and allow the nonmov[ing party] the benefit of all reasonable inferences to be drawn from the evidence." *Id.*  The ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52.

**Analysis**

    **i.**    **Ed Gilmore**

Defendants assert "Gilmore played no role in the Plaintiff's termination from the Healthy Start program."  *See* Doc. 26 at 1.  Attached to the Motion is an affidavit by Peña stating:

> I discussed my decision to terminate Ms. Ochoa with my immediate supervisor, Rheganne Vaughn, the then Special Projects and Grant Administrator.  At no time did Ed Gilmore direct me to terminate Ms. Ochoa nor did he approve of said termination.  In fact, Mr. Gilmore played no role in the decision to terminate or in the termination of Ms. Ochoa.

Plaintiff argues that Peña's affidavit is unreliable and that "she is not competent to testify as to whether Ed Gilmore 'approved of said termination' or 'played no role in the decision to terminate or in the termination of Ms. Ochoa.'"  Doc. 29 ¶ 2 at 2.  She further asserts that Gilmore is the person competent to testify to those issues.  *Id.*  Plaintiff contends that "Gilmore intended to terminate Ochoa's County employment," *Id.* at 3.  *See* Ochoa Affidavit, ¶ 7 (Doc. 29-1).  She argues that

> due to the lack of competent, admissible evidence on Gilmore's involvement, the express intent of Gilmore to terminate Ochoa prior to the termination being effective, and the clear mandate of Ordinance 23 that Gilmore approve the termination, questions of fact exist on Gilmore's involvement in the termination that cannot be appropriately resolved through Defendant's motion for summary judgment.

Doc. 29 at 6.

The main basis of Ms. Ochoa's argument that Mr. Gilmore knew and approved of her

dismissal is that, prior to a termination of an employee, the County Manager must be consulted and approve the termination and that Mr. Gilmore was the acting County Manager at that time. *See* Doc. 29 ¶ 3 at 3.  Ms. Ochoa contends that, accordingly, Mr. Gilmore participated in the allegedly unconstitutional acts.  She also asserts that Mr. Gilmore verbally expressed his desire for her to be fired.

Regardless of whether Mr. Gilmore has stated any intention or desire to have her employment with the County terminated, Ms. Ochoa has not shown any basis for Mr. Gilmore having authority to perform or approve such termination or to act unconstitutionally with regard to her termination.  Ms. Ochoa asserts that Mr. Gilmore was acting County Manager and that, pursuant to County ordinance, his approval was needed to terminate her employment; however, Defendants have provided a sworn affidavit from Danny Gonzales, the Human Resources/Personnel Director for the County of Luna, which advises that Mr. Gilmore has, at no time, been the Luna County Manager or Acting Luna County Manager. *See* Doc. 34-1 ¶ 3 at 1.  Mr. Gonzales also provided the names of the individuals who were the acting day-to-day managers on the relevant dates.  Mr. Gilmore has not been shown to have held any supervisory capacity related to Ms. Ochoa or her termination.  Additionally, in her affidavit, Ms. Peña has stated that she made the decision to terminate Ms. Ochoa and that she consulted with her supervisor, but not Mr. Gilmore, about the decision. *See* Doc. 26-1 ¶¶ 3-4 at 1.

While Ms. Ochoa points to some hearsay statements that Mr. Gilmore had stated that he wanted to fire Ms. Ochoa, she points to no admissible evidence showing that Mr. Gilmore had made the statements or that he had authority to terminate her.  When considering summary judgment motions,

[h]earsay evidence is generally inadmissible. FED.R.EVID. 802.  Such evidence "is

5

> a statement, other than one made by the declarant while testifying at the trial or
> hearing, offered in evidence to prove the truth of the matter asserted." FED.R.EVID.
> 801(c).  A statement is not hearsay, however, if it is an admission of a party
> opponent.  FED.R.EVID. 801(d)(2).  An admission of a party-opponent is, among
> other things, a statement "offered against a party and is . . . (C) a statement by a
> person authorized by the party to make astatement concerning the subject, or (D) a
> statement by the party's agent or servant concerning a matter within the scope of the
> agency or employment, made during the existence of the relationship."  *Id.*

*Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 984 (10th Cir. 2008).  Ms. Ochoa has no personal knowledge of any statement by Mr. Gilmore regarding her termination.  Further, an expression by Mr. Gilmore of his desire to terminate Ms. Ochoa is irrelevant because there is nothing to show that he had a role in her termination.  Ms. Ochoa has not provided any evidence to demonstrate that Mr. Gilmore actually may have played a role in the decision to terminate her that creates a genuine issue of material fact on this matter.  Therefore, the Court need not delve into the qualified immunity argument presented by Defendants on behalf of Mr. Gilmore.  There simply is no showing that Mr. Gilmore in fact acted against Ms. Ochoa, making the decision to fire her, approving of her termination or otherwise.  Mr. Gilmore is entitled to judgment in his favor.

### ii.    Claudia Peña

Defendants argue that Ms. Peña believed that Ms. Ochoa was an at-will employee and terminated Ms. Ochoa "for her inappropriate and unprofessional behavior," and, therefore, she is entitled to qualified immunity and judgment in her favor.  Doc. 28 at 1.  When a defendant raises the defense of qualified immunity, the plaintiff must allege facts showing that the individual defendant's actions violated a constitutional right and that the constitutional right was clearly established at the time of the alleged violation.  *See Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).  Issues of qualified immunity are best resolved at the "'earliest possible stage in litigation.'"  *Pearson v. Callahan*, --- U.S. ----, ----, 129 S.Ct. 808, 815 (2009) (quoting *Hunter v.*

*Bryant*, 502 U.S. 224, 227 (1991)).  Qualified immunity shields government officials from liability

where "their conduct does not violate clearly established statutory or constitutional rights of which

a reasonable person would have known." *Pearson*, 129 S.Ct. at 815 (quoting *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982)).  Courts evaluating qualified immunity claims "'must first determine

whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so,

proceed to determine whether that right was clearly established at the time of the alleged violation.'"

*Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)).

While this sequence is no longer considered mandatory, it is often appropriate.  *See Pearson* 129

S.Ct. at 818.  "Deciding the constitutional question before addressing the qualified immunity

question . . . promotes clarity in the legal standards for official conduct, to the benefit of both the

officers and the general public." *Wilson*, 526 U.S. at 609.

A clearly established right is generally defined as a right so thoroughly developed and

consistently recognized under the law of the jurisdiction as to be "indisputable" and "unquestioned."

*Zweibon v. Mitchell*, 720 F.2d 162, 172-173 (D.C. Cir. 1983), *cert. denied*, 469 U.S. 880 (1984).

"In assessing whether the right was clearly established, we ask whether the right was sufficiently

clear that a reasonable government officer in the defendant's shoes would understand that what he

or she did violated that right.  If the plaintiff fails to satisfy either part of the two-part inquiry, we

must grant the defendant qualified immunity." *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d

1323, 1327 (10th Cir. 2007).

The Constitution prohibits a governmental entity from depriving a public employee of a

property interest in continued employment without due process of law.  *See Cleveland Bd. of Educ.*

*v. Loudermill*, 470 U.S. 532, 538 (1985).  A public employee who can successfully demonstrate a

property interest in employment is entitled to due process before he or she can be terminated, but,

private employees and public employees who cannot show a property right in employment are not
constitutionally entitled to the same procedures. *See Bd. of Regents. v. Roth*, 408 U.S. 564, 576-77
(1972)*; Zamora v. Village of Ruisdoso Downs*, 120 N.M. 778, 782, 907 P.2d 182, 186 (N.M. 1995).
 "[T[he requirements of . . . due process apply only to the deprivation of interests encompassed by
the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents*, 408 U.S. at 569.
"Property interests, of course, are not created by the Constitution." *Id.* at 577.   Rather, the
"[d]etermination of whether a plaintiff has a property interest is a question of state law." *Conaway
v. Smith*, 853 F.2d 789, 793 (10th Cir. 1988) (citing *Bishop v. Wood*, 426 U.S. 341, 344 (1976)).  "In
the employment context, a property interest is 'a legitimate expectation in continued employment.'"
*Hess v. Town of Jackson, Wyoming*, 541 F.3d 1240, 1245 (10th Cir. 2008) (quoting *Lighton v. Univ.
of Utah*, 209 F.3d 1213, 1221 (10th Cir. 2000)).  The existence of a property interest is determined
by analyzing the applicable state law.  *See Hess v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1245 (10th
Cir. 2008).  There is no requirement that the legislature provide the proper guidelines to satisfy due
process; a county's personnel manual may provide adequate procedures.  *See Zamora*, 120 N.M. at
785, 907 P.2d at 189.  Accordingly, the Court looks to the County ordinance to determine whether
Ms. Ochoa had a protected property interest in her employment with Luna County.

Based on the facts presented by Ms. Ochoa, it would appear that she may have had a property
interest in her employment, and may have been considered a full-time employee of Luna County.
According to Ms. Ochoa she was hired for a position which was supported by a grant but that she
did not receive any documentation to indicate that she was other than a full-time regular employee.
She worked a full-time work schedule and was subject to a six-month probationary period similar
to other full-time regular employees under the 2000 version of Ordinance 23.  Only with the passing
of the more recent Ordinance 23 was there an indication that her position may have become

8

something less than permanent.

Defendants have not provided sufficient evidence in their motion or reply to dispute these contentions or for the Court to determine what type of employee Ms. Ochoa was at the time of her hire.  Regarding Ms. Peña, Defendants assert

> The Healthy Start Program is funded with grant funds received from the federal government.  The Luna County Personnel Ordinance provides that employees who work in positions funded by grant monies are at-will.  The Plaintiff was terminated by her supervisor, Claudia Peña, the Healthy Start Director, for legitimate non-discriminatory business reasons. Therefore, Defendant Claudia Peña is entitled to qualified immunity in this matter.

*See* Doc. 28 at 1-2.

With regard to whether Ms. Ochoa had a constitutional right - or property interest - in continued employment, Defendants state that "[b]oth the old Luna County Ordinance and the Amended Luna County Ordinance provide that Healthy Start employees are terminable at will." Doc. 28 at 6.  Defendants further assert that "all Healthy Start employees understood that they would lose their employment if Healthy Start program lost its grant with the federal government."  *Id.* Defendants contend that, therefore, Plaintiff did not have a legitimate expectation in continued employment and Plaintiff's constitutional rights were not violated.  *Id.*  Although Defendants did not provide the Court with a copy of the ordinances or provide the court with the wording from the ordinances upon which it based its argument, Plaintiff did provide copies of the ordinances with its response to the motion regarding Ms. Peña.  In its review of the "old" version of the ordinance, the Court found no reference to "Healthy Start employees" or to employees whose positions were funded by grants.  The newer version does state generally that grant employees are terminable at will.  *See* Doc. 33-5 ¶ 2.5 at 4.

Defendants argue that when Ms. Peña was hired she was told that Healthy Start Program is

grant funded and that she was a term employee. *See* Doc. 28 ¶ 1 at 2. Defendants also argue that Peña understood that she could be terminated for any legal reason and she would not have a grievance process available to her. *See* Doc. 28 ¶ 2 at 2. Defendants have not, however, provided the Court with any documentation that the program is grant funded, or that Plaintiff was notified at her hire in writing that she was a term or grant-funded employee and/or that her position would be terminated if or when the funding terminated. Defendants have not established that, with regard to the allegations against Ms. Peña, there is not a dispute as to whether a constitutional right has been violated and that they are entitled to judgment as a matter of law. A genuine issue of material fact remains. Defendants' motion for summary judgment on behalf of Ms. Peña will be denied.

### iii.      State-law claims

Defendants contend that Plaintiff's causes of action in Counts III and IV are improperly brought against Ms. Peña, in that they are applicable only to the employing entity. *See* Doc. 28 at 7. Ms. Ochoa has agreed with Defendants' analysis in this regard and has agreed to the dismissal of her state-law claims against Ms. Peña. Defendants' motion will be granted with regard to the state-law claims.

**IT IS THEREFORE ORDERED THAT** *County Defendants' Motion for Summary Judgment Based in Part on Qualified Immunity on Behalf of Ed Gilmore* (Doc. No. 26) is GRANTED; and

**IT IS FURTHER ORDERED THAT** *County Defendants' Motion for Summary Judgment Based in Part on Qualified Immunity on Behalf of Claudia Peña*, filed October 30, 2009 (Doc. No. 28), is DENIED in part and GRANTED in part. It is GRANTED with regard to the state-law claims; the remainder of the motion is DENIED. The state-law claims are hereby dismissed.

Dated this 15th day of July, 2010.

**MARTHA VAZQUEZ**
**CHIEF UNITED STATES DISTRICT JUDGE**

Attorney for Plaintiff:
Michael E. Mozes, Esq.

Attorney for Defendants:
William D. Slease, Esq.
Jonlyn M. Martinez, Esq.