IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DORA OCHOA,

        Plaintiff,

v.                                                                                                      Civ. No. 09-612 MV/WPL

BOARD OF COUNTY COMMISSIONERS OF
LUNA COUNTY, *et al.*,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment, filed February 7, 2011. (Doc. 77). The Court, having reviewed the motion, briefs, relevant law and being otherwise fully informed, finds that the motion should be **DENIED**.

**BACKGROUND**

This case arises out of Plaintiff Dora Ochoa's termination as an employee of Luna County Healthy Start. According to her Complaint, in January 2005, Ms. Ochoa was hired by Luna County Healthy Start. (Doc. 1 at ¶ 9). Ms. Ochoa was a "grant" employee. (*Id.*). The first six months of her employment was a probationary period, after which Ms. Ochoa alleges that she became a permanent employee. (*Id.*).

Defendant Claudia Peña, Ms. Ochoa's supervisor, notified Ms. Ochoa, on April 10, 2009, that she had been rude regarding an April 7, 2009 document. (*Id.* at ¶ 10). Ms. Peña told Ms. Ochoa that she wished to meet with her. (*Id.*). During the conversation, Ms. Peña became upset and told Ms. Ochoa not to speak with anyone. (*Id.*). That same day, Ms. Peña handed Ms. Ochoa a document to sign—a Performance Correction Notice with a notice of immediate dismissal—and demanded that Ms. Ochoa sign the document with no questions asked. (*Id.* at

¶¶ 11-12). Because Ms. Peña was visibly upset and Ms. Ochoa wished to avoid confrontation, Ms. Ochoa quickly signed the document. (*Id.* at ¶ 11). Immediately after Ms. Ochoa had signed the document, Ms. Peña advised her that she was fired and should pick up her belongings and leave. (*Id.*). Ms. Ochoa alleges that the Performance Correction Notice "contained false and slanderous information that Ochoa neither agreed with nor participated in" and that the "deceptive manner in which Pena forced Ochoa to sign the Notice of Dismissal supports Ochoa's claims that the document had no basis in fact." (*Id.* at ¶ 12). Ms. Ochoa also alleges that the Performance Correction Notice falsely stated that she had received verbal notifications regarding her conduct that she had not, in fact, received. (*Id.* at ¶ 16). She further asserts that though the dismissal notification "alleged direct insubordination of supervisor," this was "a bogus, disingenuous, and fabricated reason for the dismissal action," as she had not been insubordinate to Ms. Peña. (*Id.* at ¶ 18). Ms. Ochoa requested a grievance hearing but was denied the hearing because she "was an at-will, grant employee and did not have any rights to access the grievance process." (*Id.* at ¶ 14).

Ms. Ochoa brings claims against the Board of Commissioners of Luna County ("the Board") and Ms. Peña for violation of her procedural and substantive due process rights in connection with her termination. Ms. Ochoa also alleges claims for wrongful termination and breach of an implied contract of employment against the Board. Specifically, Ms. Ochoa alleges that pursuant to the 2000 version of Ordinance 23, under which she was hired, she could be fired only for cause and was entitled to grieve adverse employment actions. (*Id.* at ¶¶ 26 & 29). In May 2006, however, Ordinance 23 was amended. The Amended Personnel Ordinance 23 contains a provision that classifies grant employees as at-will employees. (Doc. 33-5 at § 2.5).

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In ruling on summary judgment, the court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party." *Zurich N. Am. v. Matrix Serv., Inc.,* 426 F.3d 1281, 1287 (10th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

**ANALYSIS**

**I.      The Statute of Limitations for Plaintiff's 42 U.S.C. § 1983 Due Process Claims**

Defendants first argue that Plaintiff's due process claims under 42 U.S.C. § 1983 are barred by the statute of limitations. In New Mexico, a three-year statute of limitations is applicable to Ms. Ochoa's § 1983 claims. *Mondragon v. Thompson*, 519 F.3d 1078, 1081 (10th Cir. 2008). The question, however, is when Ms. Ochoa's action accrued and the limitations period began to run. Plaintiff claims that her § 1983 due process claims did not accrue until April 10, 2009, when she was terminated (just months before this suit was filed). Prior to that time, Plaintiff contends that she had suffered no justiciable injury. Defendants, by contrast, contend that Ms. Ochoa's action accrued on May 30, 2006, when she received a copy of amended Ordinance 23, and that this action, which was filed on June 23, 2009, is thus barred by the statute of limitations.

Federal law governs the question of accrual for federal causes of action and thus dictates the date on which Ms. Ochoa's § 1983 claims accrued and the statute of limitations period started to run. *Id*. at 1082; *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998). Under federal law, a civil rights action accrues when the plaintiff knows or has reason to know of the

injury upon which the action is based.  *Smith*, 149 F.3d at 1154.  In a § 1983 case, the injury is a violation of a constitutional right.  *Id.*  Accordingly, the Court must identify the constitutional violation alleged and determine when Ms. Ochoa knew or should have known that her constitutional rights had been violated.  *Id.*

The Fourteenth Amendment proscribes a state from depriving a person of "life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  Accordingly, to prevail on either her procedural or substantive due process claim, Ms. Ochoa must first establish that she had a protected property right in her employment.  *Potts v. Davis Cnty.*, 551 F.3d 1188, 1192 (10th 2009).

In this case, there is no dispute that Luna County Personnel Ordinance 23 was amended in 2006.  The 2000 version of Ordinance 23 defined "at-will employees" as "[e]mployees appointed in accordance with statute, or job description, who serve at the discretion of the elected official or County Manager" and further provided that at-will employees "shall be terminable at will and may not grieve disciplinary actions."  (Doc. 33-2 at § 2.6).  In 2006, the provision defining "at-will employee" was amended to read as follows:

> All at-will employees may have an employment contract clarifying the terms of employment.  All employees in county government except the County Manager, Chief Operations Officer, County Attorney, Business Office Manager, Sheriff's Captain and chief deputies of elected officials shall be considered merit employees.  ***Term, grant or temporary employees are also at will.***  The County Manager, Chief Operations Officer, Business Office Manager, and County Attorney shall be governed by the terms of their employment contracts.

(Doc. 33-5 at § 2.5 (emphasis added)).  Defendants contend that because this amendment classified all grant employees as at-will employees, it terminated any property interest Ms. Ochoa may have had in her position and thus the statute of limitations began to run when Plaintiff received a copy of the 2006 version of Ordinance 23.

In support of their argument, Defendants rely on *Smith v. City of Enid*, 149 F.3d 1151 (10th Cir. 1998). In *Smith*, the Tenth Circuit held that a firefighter's procedural due process claim accrued when he received notice of a statutory amendment that required participants in a deferred compensation plan (such as him) to retire at the end of five years of participation, rather than when he was actually forced to retire without the benefit of a hearing due to the applicability of the statute. *Id*. at 1155-56. Defendants argue that in accordance with *Smith*, Plaintiff's due process claims accrued when she received a copy of the 2006 version of Ordinance 23, which specifically defined grant employees as being at-will employees. Plaintiff, on the other hand, argues that her cause of action did not accrue until an actual adverse employment action in the form of her termination occurred.

A strong argument may be made that it is the termination of Ms. Ochoa's legitimate expectation of continued employment that constitutes the constitutional injury pursuant to *Smith*, rather than the actual termination of her employment. To the extent that the 2006 version of Ordinance 23 removed Ms. Ochoa's legitimate expectation of continued employment (as Defendants contend), it would have terminated any property interest Ms. Ochoa had in her position. *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998) ("The standard for the existence of a property right in employment is whether the plaintiff has a legitimate expectation of continued employment."). However, even assuming arguendo this is the case, the inquiry would not end there as the relevant inquiry is not simply when the constitutional injury occurred but rather when Plaintiff knew or had reason to know of the injury.

The Court finds that there are genuine issues of material fact as to whether Ms. Ochoa knew or should have known of her injury on May 30, 2006 when she apparently received a copy of the amended Ordinance 23. While Plaintiff does not recall receiving a copy of the amended

ordinance in May 2006, she does acknowledge that she signed a document indicating her receipt of Ordinance 23.  (Doc. 77-1 at 51:21-52:10; Doc. 80-1 at 138:15-25).  Ordinance 23, however, is approximately 30-pages in length.  (Docs. 33-5 to 33-7).  The only reference to "grant employees" in the 2006 version of Ordinance 23 is the single sentence that appears in the paragraph defining "at-will employee," which reads:  "Term, grant or temporary employees are also at will."  (Doc. 33-5 at § 2.5).  Notably, however, while the definition of an "at-will employee" in the 2000 version of Ordinance 23 explicitly states that "At-Will employees shall be terminable at will and may not grieve disciplinary actions," this language is omitted in the 2006 version.  (*Compare* Doc. 33-2 at § 2.6 *with* Doc. 33-5 at § 2.5).

   Further complicating matters, the provision of the 2006 version of Ordinance 23 that defines "due process" does not refer to either "grant employees" or "at-will employees," but instead refers to "full-time regular employees" (to which the right applies) and to appointed, probationary, temporary, casual, part-time and term employees (to which the right does not apply).  (Doc. 33-5 at § 2.12).  Likewise, the provision of amended Ordinance 23 addressing dismissal does not mention "grant employees" or "at-will employees" but instead provides that department heads and elected officials "have the authority to dismiss regular employees for cause," while "appointed officials" may be dismissed "with or without cause."  (Doc. 33-6 at § 5.7).  The provision further provides:  "Dismissals, except for appointed officials and employees with specific contract provisions to the contrary, may be grieved through the formal grievance process."  (*Id.*).  Similarly, Section 7, which addresses employee discipline, refers to the rights due to "regular employees."

    Finally, the 2006 version of Ordinance 23 defines a "full-time regular employee" as "one who has completed the probationary period and who normally is scheduled to work a minimum

of 40 hours per week, year round and not subject to contract or term conditions," while a part-time regular employee works 20 or more hours per week, but less than 40 hours per week. (Doc. 33-5 at §§ 3.1 to 3.2). Ms. Ochoa has presented evidence that she completed a probationary period. (Doc. 80-7). Moreover, neither party has presented any evidence on summary judgment indicating that Ms. Ochoa was subject to contract or term conditions.

Considering the various provisions of the 2006 version of Ordinance 23 noted above, the Court cannot say based on the present record that, as a matter of law, Ms. Ochoa, a lay person, should have known upon receipt of the amended ordinance that the May 2006 amendments terminated her legitimate expectation of continued employment. To the contrary, certain provisions of the ordinance appear to support her claim that she was a regular employee who could be terminated only for cause and was entitled to grieve her dismissal. This conclusion is further underscored by the evidence that apart from providing Ms. Ochoa with a copy of the amended ordinance, nothing was done to advise her regarding the changes that had been made. (Doc. 80-1 at 139:1-4; Doc. 80-2 at 10:4-11; Doc. 80-3 at 28:11-21). While the absence of training or additional information regarding specific changes may be of little importance where the ordinance involved is relative short or clear on its face, the ordinance at issue here is approximately 30-pages long and involves ambiguity. Moreover, as noted above, Defendants' argument relies primarily on a single sentence in the definition section of Ordinance 23 and the terminology contained therein is not consistently used throughout the remainder of the ordinance. Accordingly, the Court will deny Defendants' request for summary judgment on the basis that Ms. Ochoa knew or should have known of her injury on May 30, 2006 and her claims are thus barred by the statute of limitations.

## II.     Plaintiff's Substantive Due Process Claim

Defendants' Motion also seeks summary judgment on Ms. Ochoa's substantive due process claims on the basis that Ms. Ochoa was terminated "due to her flagrant rudeness and insubordination" and that such conduct does not shock the contemporary conscience.

A substantive due process claim requires Ms. Ochoa to establish governmental conduct that is "arbitrary, irrational, or shocking to the contemporary conscience." *Darr v. Town of Telluride*, 495 F.3d 1243, 1257 (10th Cir. 2007).[1]  The substantive component of the Due Process Clause is not a guarantee against incorrect or ill-advised personnel decisions. *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992); *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 530 (10th Cir. 1998).  Rather, it is intended to prevent government officials from abusing their power or employing their power as an instrument of oppression. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).  "[O]nly the most egregious official conduct" will be found to violate a plaintiff's substantive due process rights. *Id*.

The evidence upon which Defendants rely in support of their argument that Ms. Ochoa was terminated due to her rudeness and insubordination is an affidavit from Claudia Peña, Ms. Ochoa's supervisor, in which she avers that when she began as Director of Healthy Start, she reviewed the personnel files of her subordinates, including the discipline that was previously given to Ms. Ochoa by her predecessor; that she determined, based on her personal observations, that Ms. Ochoa could be rude and difficult to work with; and that on or about April 10, 2009, she

---

[1] The Court notes that there is some question whether an employee with a state-created property right in employment is protected by substantive due process. *See Potts v. Davis County*, 551 F.3d 1188, 1193 n.1 (10th Cir. 2009); *but see Darr*, 495 F.3d at 1257.  However, in their Motion, Defendants do not seek summary judgment on the basis that substantive due process is inapplicable to employment claims and, accordingly, the Court does not address the issue here.

terminated Ms. Ochoa "due to her flagrant rudeness and insubordination." (Doc. 28-1 at ¶ 6).

In opposing the Motion for Summary Judgment, Plaintiff submits various excerpts from her deposition challenging the allegations contained in the April 10, 2009 Performance Correction Notice (Doc. 80-5), which notified Ms. Ochoa of the allegations against her and of her immediate dismissal.  For example, Ms. Ochoa testified that when she confronted one of the co-workers who Ms. Peña had claimed made allegations against Ms. Ochoa, the individual denied having made the allegations. (Doc. 80-1 at 42:5-43:3).  Ms. Ochoa likewise denies having behaved in an unprofessional manner towards Ms. Peña and Mr. McClintock. (*Id.* at 67:10-68:16 ).  She further denies the veracity of an earlier allegation that she failed to demonstrate professional and respectful behavior towards a client. (*Id.* at 53:16-56:15).  Ms. Ochoa also testified that when Ms. Peña spoke with her, Ms. Peña would not hear her side of the story, but instead acted in a mocking manner, laughing and pointing fingers at Ms. Ochoa. (Doc. 80-1 at 38:21-40:9).

To the extent that Ms. Ochoa was terminated due to rudeness and insubordination, such termination would not be arbitrary, capricious, or without reason, even if the manner in which Ms. Peña behaved while terminating Ms. Ochoa was inappropriate or disrespectful.  However, Ms. Ochoa has alleged that the reasons given for her dismissal were "bogus, disingenuous, and fabricated." (Doc. 1 at ¶¶ 12 & 18).  Unfortunately, neither party has submitted significant evidence surrounding Ms. Ochoa's termination.  Defendants rely on a single paragraph contained in Ms. Peña's affidavit, while Plaintiff relies on limited excerpts from her own deposition.[2]

---

[2] Plaintiff contends that as Ms. Peña has been unavailable for deposition, she has been unable to test the veracity of the facts set forth in Ms. Peña's affidavit and therefore requests that the Court stay a decision on this summary judgment motion until after Ms. Peña is deposed. Plaintiff, however, fails to submit an affidavit or declaration as required by Federal Rule of Civil Procedure 56(d).  Defendants, on the other hand, contend that Plaintiff had opportunities to

Nonetheless, the Court finds that Ms. Ochoa has presented evidence from which one could infer that the allegations made against her were disingenuous and that she was not terminated due to rudeness and insubordination. Accordingly, based on the present record, the Court will deny Defendants' request for summary judgment as there are genuine issues of material facts surrounding the basis for Ms. Ochoa's termination.

### III. Plaintiff's State Law Claims

Finally, Defendants seek summary judgment as to Plaintiff's state law claims for wrongful discharge and breach of implied contract on the basis that Plaintiff was an at-will employee with no reasonable expectation that she could be discharged only for cause. In order to establish either a claim for wrongful discharge or for breach of an implied contract, Plaintiff must prove that there was an implied agreement that she could be discharged only for cause.[3] For an implied agreement to exist, there must have been a promise, representation or conduct sufficiently specific to create a reasonable expectation in the mind of Ms. Ochoa that she could be discharged only for cause. *See* NMRA, Civ. UJI 13-2303; *Garrity v. Overland Sheepskin Co. of Taos*, 121 N.M. 710, 713-14, 917 P.2d 1382, 1385-86 (N.M. 1996); *Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 672, 857 P.2d 776, 783 (N.M. 1993).

Defendants argue that Ms. Ochoa could have no reasonable expectation that she would be discharged only for cause as the 2006 version of Ordinance 23 explicitly defines grant employees as at-will employees. However, as discussed in more detail above, Ordinance 23 is

---

depose Ms. Peña but instead elected to wait until the eve of the discovery deadline when Ms. Peña was out on maternity leave. As the Court finds that, based on the present record, there are genuine issues of material fact, it need not address the request for a stay so that Ms. Peña may be deposed.

[3] Ms. Ochoa does not contend that she was terminated for engaging in protected activity.

not nearly as clear as Defendants suggest.  To the contrary, the portion of the 2006 version of Ordinance 23 that addresses dismissal provides that department heads and elected officials have the authority to dismiss "regular employees" for cause, while "appointed employees" may be dismissed with or without cause, and additionally provides that "[d]ismissals, except for appointed officials and employees with specific contract provisions to the contrary, may be grieved through the formal grievance process."  (Doc. 33-6 at § 5.7).  This dismissal provision, which is worded similarly to that contained in the 2000 version of Ordinance 23 (Doc. 33-2 at § 5.7), makes no reference to "grant employees" or "at-will employees."  Further, as discussed above, the 2006 version of Ordinance 23 defines a "full-time regular employee" as one has completed a probationary period (as Plaintiff had) and who normally is scheduled to work a minimum of 40 hours per week and not subject to contract or term conditions.  (Doc. 33-5 § 3.1).

In light of the above, the Court rejects Defendants' argument that, as a matter of law, Ms. Ochoa could have no reasonable expectation that she would be discharged only for cause due to language in the 2006 version of Ordinance 23 defining grant employees as at-will employees.  Both the 2000 and 2006 versions of Ordinance 23 contain language that restricts the County's ability to terminate regular employees and there is some evidence that Ms. Ochoa fits within the definition of a regular employee.  Accordingly, based on the limited evidence provided, there are genuine issues of material facts surrounding whether an implied agreement existed such that Ms. Ochoa could be terminated only for cause.  The Court will therefore deny Defendants' request for summary judgment on the state law claims.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. 77), filed February 7, 2011, is **DENIED**.

Dated this 22nd day of August , 2011.

_____
**MARTHA VÁZQUEZ**
**UNITED STATES DISTRICT JUDGE**


Attorney for Plaintiff:
Michael E. Mozes, Esq.

Attorney for Defendants:
Jonlyn M Martinez, Esq.